The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMMED SABBAGHI,<br><br>               Petitioner,<br>v.<br><br>JANET A. NAPOLITANO,[1] Secretary, Department of Homeland Security; and ROBIN OKI,[2] Seattle Field Office Director, United States Citizenship and Immigration Services<br><br>               Respondents. | No. C08-1641-PET<br><br>RESPONDENTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

The case involves an alien, Petitioner Mohammed Sabbaghi ("Sabbaghi"), whose naturalization application was denied by Respondents. Sabbaghi now requests this Court to issue its own decision upon de novo review.

The United States Citizenship and Immigration Services ("USCIS") denied Sabbaghi's naturalization application on July 19, 2007, and denied Sabbaghi's appeal of the decision on September 25, 2008. Sabbaghi's complaint asserts jurisdiction under 8 U.S.C. § 1421(c), 8 U.S.C. § 1147(b),[3] 8 C.F.R. §§ 310(b) & 336(a)-(d), 5 U.S.C. § 706(1), and 28 U.S.C.

---

[1] In accordance with Fed. R. Civ. P. 25(d)(1), Janet Napolitano is hereby substituted for Michael Chertoff as a Respondent in this Case.

[2] In accordance with Fed. R. Civ. P. 25(d)(1), Robin Oki is hereby substituted for Julia Harrison as a Respondent in this Case.

[3] This Court lacks jurisdiction under 8 U.S.C. § 1147(b) because the statute does not exist. Even if Sabbaghi made a scrivener's error and intended to assert jurisdiction under 8 U.S.C. § 1447(b), this Court would still lack jurisdiction. 8 U.S.C. § 1447(b) allows for naturalization applicants to request a hearing before a district court when USCIS fails to render a naturalization determination by the end of the 120-day period after the date on which it conducts its examination. Here, USCIS did make a final naturalization determination on September 25, 2008. Certified Administrative Record at 351-58. Therefore, the statute is inapplicable.

U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7171

§§ 1331[4] & 1361. Sabbaghi's Complaint ("Complaint") at ¶¶ 1, 9. In his Complaint, Sabbaghi's only claim, which is wholly unsubstantiated by factual or legal argument, is that USCIS did not follow its own regulations when it denied his naturalization application. Because Sabbaghi fails to challenge the substance of USCIS's denial of his naturalization application, and because, accordingly, there exists no issue of material fact, summary judgment is appropriate.

Even if this Court were to examine the merits of a claim – which Sabbaghi did not sufficiently assert – that USCIS erred in its decision to deny his naturalization application, it would have to find such a claim unavailing. Sabbaghi not only failed to meet his burden of establishing good moral character during the statutory period, but failed to demonstrate the requisite attachment to the principles of the Constitution and form of government of the United States. As such, this Court should grant summary judgment in Respondents' favor.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Sabbaghi, a native of Iran and a citizen of Iran and Italy, entered the United States as a tourist on a Visitor B-2 visa on August 11, 1988. Certified Administrative Record ("CAR") at 678; 684-85. He became a lawful permanent resident on January 24, 1995. CAR at 678; 692.

---

[4] This Court lacks jurisdiction under 28 U.S.C. § 1361, known as the Mandamus Act. The Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is "a drastic one, to be invoked only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402 (1976); see also Armster v. United States District Court, 792 F.2d 1423, 1431 (9th Cir. 1986). A party will be granted mandamus relief only if he demonstrates: (1) the defendant has a plainly defined and non-discretionary duty to do a ministerial act; (2) the plaintiff has a clear right to the relief he is seeking; and (3) the plaintiff has no available, adequate remedy. See Guerrero v. Clinton, 157 F.3d 1190, 1197 (9th Cir. 1998). These factors must all exist before a writ of mandamus may be issued. Id. As the Supreme Court has explained, a plaintiff's right to mandamus must be "clear and indisputable," Allied Chemical, Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980), and the defendant must owe the plaintiff "a clear non-discretionary duty." Heckler v. Ringer, 466 U.S. 602, 616-17 (1984).

In this case, Sabbaghi fails to meet two of the three requirements of mandamus jurisdiction. Because Sabbaghi seeks relief for the same claim under 8 U.S.C. § 1421(c), 5 U.S.C. § 706(1), and C.F.R. §§ 310(b) & 336(a)-(d), he has not met the requirement that he has no other "available, adequate remedy." Guerrero, 157 F.3d at 1197; see also Heckler v. Ringer, 466 U.S. 602, 616 (1984) (mandamus under § 1361 is "intended to provide a remedy for a plaintiff only if [s]he has exhausted all other avenues of relief"). In addition, as discussed supra at Parts I. & II., Sabbaghi lacks a clear right to the relief he fails to assert any legal or factual argument as to why USCIS erred in determining that he was ineligible for naturalization, and because even if he had, there is no issue of material fact because he cannot demonstrate good moral character and failed to demonstrate sufficient attachment to the Constitution and form of government of the United States. Accordingly, this Court should not invoke the extraordinary remedy of mandamus.

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

His wife, Dr. Anna Giustozzi, is a naturalized United States citizen and physician. CAR at 536-37.

Sabbaghi filed an Application for Naturalization on March 10, 2004 under 8 U.S.C. § 1427. CAR at 351; 534-43. A USCIS officer interviewed him under oath regarding his application on October 21, 2004, and on March 14, 2007. CAR at 539-41; 164-174. At the end of each interview, Sabbaghi attested, by signature, that he knew the contents of his naturalization application were "true and correct." CAR at 164; 305; 543. On July 19, 2007, USCIS denied Sabbaghi's application because it determined that he lacked good moral character. CAR at 520-33.

Sabbaghi filed a request for a review hearing pursuant to 8 U.S.C. § 1447(a) on July 26, 2007. CAR at 351; 517. He underwent another interview on March 5, 2008, and again signed under penalty of perjury that all his answers were true and correct. CAR at 517; 222.

On September 25, 2008, USCIS denied Sabbaghi's appeal in its N-336 decision. CAR at 351-58. USCIS addressed a number of issues, including Sabbaghi's history of civil litigation, in its decision. Id. Specifically, USCIS discussed the fact that the Superior Court of Washington for King County issued restraining orders against Sabbaghi in 2005 for unlawful harassment against Dr. Alfred Aflatooni, MD, for whom Sabbaghi's wife used to work. Id. As described in a report dated March 25, 2005 by the Auburn, Washington Police Department, Sabbaghi approached Dr. Aflatooni in the parking lot of the building where Dr. Aflatooni and Sabbaghi's wife worked. Id. Sabbaghi confronted Dr. Aflatooni about selling him a percentage of Dr. Aflatooni's business. Id. The report states that after Dr. Aflatooni instructed Sabbaghi to contact his attorney, Sabbaghi said, "I will take care of you," and alleged that he had "hired two people to take [Aflatooni] back to Iran." Id. The report further describes that, after Dr. Aflatooni got into his vehicle to drive away, Sabbaghi followed him in his car until Dr. Aflatooni was able to drive into a parking stall. Id.

In a statement to the Superior Court describing the acts that gave rise to his request for an order of protection, Dr. Aflatooni stated that Sabbaghi told him the following in the parking lot on March 25, 2005: that if Dr. Aflatooni did not sign a business agreement, Sabbaghi would

Respondents' Motion for Summary Judgment
C08-1641-PET                                3

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

"have [Dr. Aflatooni] killed." CAR at 388. Dr. Aflatooni also noted in that statement that "for the past three months [Sabbaghi] had been making plans to kill me and that he would chop up my body and send the remains to the southern part of the country of Iran," and that Sabbaghi would kill him more quickly if he learned that Dr. Aflatooni had called the FBI. Id. Dr. Aflatooni also stated that in the past, Sabbaghi had "verbally insulted me, threatened me, and abused me on numerous occasions in front of my personnel . . . [o]n more than one occasion he has threatened to put a bomb in my car or create an accident on the highway to kill me." CAR at 389. He continued, "I have been uneasy and wary of Mr. Sabbaghi before, but now more than ever I am afraid that he may carry through with his threats . . . [h]e is attempting extortion using mafia and terrorist like tactics. I believe my life is in danger." Id.

The Superior Court found that Sabbaghi committed unlawful harassment and issued a temporary order of protection on March 31, 2005, which the court extended on April 11, 2005. CAR at 379-81; 386-89; 408-09. The court ordered Sabbaghi not to contact Dr. Aflatooni or any employee other than Sabbaghi's wife, and it ordered Sabbaghi to remain at least 1,000 feet from Dr. Aflatooni's residence and clinics. Id. On May 11, 2005, after a hearing at which both Dr. Aflatooni and Sabbaghi were present, the Superior Court of Washington for King County issued a permanent order of protection against Sabbaghi for harassment. CAR 464-65.

In denying Sabbaghi's naturalization application, USCIS also considered several instances in which Sabbaghi provided false testimony. CAR at 351-58. For instance, USCIS found that Sabbaghi testified falsely during his 2004 interview. CAR at 354. During that interview, and relating to his naturalization application, Sabbaghi answered "no" when asked, "Have you ever been charged with committing any crime or offense?" CAR at 165, 354. During his March 14, 2007 interview, when Sabbaghi was asked whether he had ever been involved in any criminal activity, he again answered "no." CAR 166. When asked whether he had ever been the subject of any time of police investigation, he testified "no." Id. With regard to whether he had been involved in any criminal or civil lawsuit, Sabbaghi stated, "Yes, in 2005 me and my wife wanted to be more involved in business at [the clinic where his wife and Dr. Aflatooni worked]." CAR at 165. At no time during any interview or in response to any question on his N-400 did

Respondents' Motion for Summary Judgment
C08-1641-PET

4

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

Sabbaghi ever mention the restraining orders issued against him. When asked about the nature of the 2005 case, for example, he stated, "Business dispute." Id. When asked how it was resolved, instead of stating that there was a permanent restraining order pending against him, he stated only, "My wife just quit that clinic." Id. He further stated that nothing regarding the dispute remained pending. CAR at 164. During Sabbaghi's appeal hearing on May 5, 2008, USCIS asked him why he stated during his two previous interviews that he was never charged with, or convicted of, any crime or offense, and he responded, "Because I didn't consider it an issue at all. Wife had business with former employer." CAR 230-31. Even after two interviews, Sabbaghi still failed and refused to admit that a court had found that he had committed unlawful harassment.

USCIS also found that Sabbaghi provided false testimony with regard to his business dealings. CAR at 354-57. During his naturalization interview on March 14, 2007, Sabbaghi stated that he derived his only source of income from Russo Gardens, and he said that neither he nor any family member had ever run a business or company out of his home. CAR at 171, 354. Contrary to his claim, however, documents in the record indicate that Sabbaghi owns a corporation called Mohanna, LLC, which he incorporated on June 27, 2005, listing his home address as that of the corporation, and of which he is the registered agent. CAR at 355, 403-05. In fact, he obtained assistance from an attorney to register the company, and he submitted a bank statement that shows he owned a business account under the name Mohanna, LLC, with a balance of $21,875. CAR at 355, 522, 437.

Finally, USCIS determined that Sabbaghi was not properly attached to the principles of the Constitution of the United States and favorably disposed toward the good order and happiness of the country. CAR at 357. During his May 5, 2008 interview, Sabbaghi provided a series of answers to questions concerning his willingness to uphold United States laws that USCIS found troubling – specifically, Sabbaghi expressed reluctance when asked about whether he would be willing to defend the United States against Iran or members of his own religion. CAR at 223, 357. As a result, USCIS concluded that Sabbaghi failed to "sincerely demonstrate[] [his] willingness to obey laws, which result from the democratic process," and "failed to show [his]

Respondents' Motion for Summary Judgment
C08-1641-PET
5

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

attachment to the principles of the Constitution and form of government of the United States." CAR at 357 (quoting 8 C.F.R. § 316.11(a)).

### III. STANDARD OF REVIEW

**A. Jurisdiction Following the Denial of a Naturalization Application**

Under 8 U.S.C. § 1421(c) and 8 C.F.R. § 336.9(b), a person whose application for naturalization is denied after a hearing before an immigration officer may seek review of the denial in the United States District Court for the district in which the person resides. "The review will be de novo, and the court will make its own findings of fact and conclusions of law." Id.

The Court's review is governed by the Administrative Procedure Act. See 8 U.S.C. § 1421(c) (stating the hearing shall be "in accordance with chapter 7 of Title 5"). As such, the Court is confined to the administrative record, or those parts of it cited by the parties. 5 U.S.C. § 706. Documents not submitted to the agency should not be considered. See, e.g., Etape v. Chertoff, 497 F.3d 379, 394 (4th Cir. 2007) (if application is denied, an applicant may receive "de novo review before the district court on a fully developed administrative record.").

**B. Summary Judgment**

Pursuant to Fed. R. Civ. P. 56(c), a court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A court must grant summary judgment against a party who fails to demonstrate facts to establish an element essential to his case where the party will bear the burden of proof of that essential element at trial. Id.

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court should not construe summary judgment as a "disfavored procedural short-cut," but should interpreted summary judgment to accomplish its purpose of isolating and disposing of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317,

Respondents' Motion for Summary Judgment
C08-1641-PET                                6

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

327 (1986).

## IV. ARGUMENT

### I. There is No Issue of Material Fact Because Sabbaghi Fails to Challenge the Substance of USCIS's Denial of his Naturalization Application

Under 8 U.S.C. § 1421(c), district courts have jurisdiction to review the denial of an application for naturalization. See Bellajaro v. Schiltgen, 378 F.3d 1042, 1046 (9th Cir. 2004). Nevertheless, 8 U.S.C. § 1421(c) does not obviate the need for an alien challenging the denial of his naturalization application to establish a genuine issue of material fact; the fact that summary judgment is not explicitly mentioned in the statute is not determinative. See, e.g., Chan v. Gantner, 464 F.3d 289, 295 (2d Cir. 2006). The Federal Rules of Civil Procedure are "applicable to proceedings for admission to citizenship . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States . . . and has heretofore conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(2); see also Pritchess v. Davis, 421 U.S. 482, 489 (1975); Wilson v. Harris, 378 F.3d 141, 143 n.2 (9th Cir. 1967). The application of the Federal Rules of Civil Procedure is the norm under the current naturalization provision. See Bellajaro, 378 F.3d at 1044, 1047.

Here, the relief Sabbaghi seeks is for this Court to determine his naturalization petition.[5] See Complaint at ¶ 10(b). In his Complaint, Sabbaghi fails to assert any legal or factual argument as to why or in what way USCIS erred in determining that he was ineligible for naturalization due to his failure to establish good moral character, asserting only that "USCIS failed to follow its own regulations, procedurally and on the merits, in denying this naturalization application." See Complaint at ¶ 7. Under the summary judgment standard, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.

---

[5] Sabbaghi also alleges that he is entitled to the award of attorneys' fees and costs. See Complaint at ¶ 10(c). Because he fails to assert a basis of jurisdiction for this claim, however, the Court must dismiss this claim. See Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001) (plaintiff must show "in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention . . . must dismiss the case, unless the defect [can] be corrected by amendment"). Even if Sabbaghi had properly asserted the Equal Access to Justice Act ("EAJA") as a basis for jurisdiction, which holds that prevailing parties may – in certain adversarial proceedings against the United States – recover attorneys' fees from the United States, his claim would still fail because he is not yet the prevailing party. See 5 U.S.C. §504; 28 U.S.C. § 2412.

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

Anderson, 477 U.S. at 256; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (a plaintiff must provide "grounds of his entitle[ment] to relief," more than mere labels, conclusions, or formulaic recitations of the elements of causes of action.) (internal quotations omitted); see also Johnson v. Riverside Health Care System, LP, 534 F.3d. 1116, 1122 (9th Cir. 2008) (a complaint must allege sufficient facts to state the elements of a claim). By failing to provide even a single fact or argument that supports his claim to relief, Sabbaghi cannot now claim that there exists an issue of material fact. Indeed, Sabbaghi cannot now argue that his Complaint meets even the very minimum requirements for such pleadings under Rule 8(a), which states, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (emphasis added); see Twombly, 544 U.S. at 570. Therefore, pursuant to Fed. R. Civ. P. 56(c), this Court should enter summary judgment to dispose of this case.

## II. Sabbaghi is Unable to Meet his Burden of Demonstrating Eligibility for Naturalization

Even if this Court were to find that Sabbaghi's Complaint adequately states a claim for relief and otherwise complies with the Federal Rules of Civil Procedure so that de novo review would be appropriate, it would nonetheless have to find wholly unavailing Sabbaghi's claim that he has met his burden of demonstrating his eligibility for naturalization. An alien petitioning for naturalization bears the burden of showing that he is eligible "in every respect" to become a United States citizen. Berenyi v. Dist. Dir., 385 U.S. 630, 637 (1967); 8 C.F.R. § 316.2(b) (a naturalization applicant bears the burden of "establishing by a preponderance of the evidence that he or she meets all the requirements for naturalization"). A court must resolve in the favor of the United States any doubts about an individual's qualification for citizenship. Id. Because the "right to become an American citizen is such a precious one, no less precious than the right to liberty and life, there must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship." Fedorenko v. U.S., 449 U.S. 490, 506-07 (1981).

There are several compelling reasons demonstrating that Sabbaghi cannot demonstrate his eligibility for naturalization. First, he failed to demonstrate the requisite good moral character

Respondents' Motion for Summary Judgment
C08-1641-PET                                     8

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

because he committed an unlawful act – harassment, which resulted in a court issuing a permanent restraining order against him – within the statutory period.[6] Second, he cannot demonstrate good moral character because he provided false testimony about the harassment incident on his naturalization application and during a naturalization interview, in addition to providing false testimony about a business he owned. Third, during his final naturalization interview, he answered several questions in a manner that demonstrated his lack of willingness to uphold United States laws. Each of these factors independently would disqualify Sabbaghi from qualification; combined, they present overwhelming evidence as to his inability to meet his burden of showing that his is eligible for naturalization.

### A. Sabbaghi Cannot Demonstrate Good Moral Character Because he Committed an Unlawful Act During the Statutory Period

An alien seeking to naturalize must establish that, during the five-year required period of residence in the United States, he has been, and continues to be, a person of good moral character. See 8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(7). The alien may reapply for naturalization five years after a disqualifying incident occurs. The regulations governing the adjudication of naturalization applications state that good moral character is lacking if, during the statutory period of five years and up to the time of admission to citizenship, an applicant committed any "unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts . . ." 8 C.F.R. § 316.10(b)(3)(iii); 8 U.S.C. § 1427(a). The seriousness of an illegal act during the statutory period is immaterial for purposes of naturalization, as long as it reflects adversely on his good moral character. See 8 C.F.R. § 316.10(b)(2)(iii) (an applicant needs only to have violated a United States law to be rendered ineligible for naturalization).

According to the Revised Code of Washington ("RCW") 10.14.08(1), a court may grant an antiharassment protection order when it finds "reasonable proof of unlawful harassment of the petitioner by the respondent and that great or irreparable harm will result to the petitioner if the

---

[6] Because Sabbaghi filed his N-400 Application for Naturalization on March 10, 2004, the statutory period for establishing good moral character commenced on March 10, 1999. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(7).

Respondents' Motion for Summary Judgment
C08-1641-PET                                9

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

temporary antiharassment protection order is not granted." An order issued under RCW 10.14.08(1) shall be effective for not more than one year, "unless the court finds that the respondent is likely to resume unlawful harassment of the petitioner when the order expires. If so, the court may enter an order for a fixed time exceeding one year or may enter a permanent antiharassment protection order." RCW 10.14.08(4).

The Superior Court of Washington for King County found that Sabbaghi committed unlawful harassment against Dr. Alfred Aflatooni. CAR at L 365-66. As a result, the Court issued Dr. Aflatooni an antiharassment protection order under RCW 10.14.08(1), reissued that order and, later, issued a full restraining order under RCW 10.14.08(4). CAR at 364-65, 374-75 379-80, 408-09. Id. The events that gave rise to the court issuing restraining orders against Sabbaghi included his direct threats to kill Dr. Aflatooni, Sabbaghi's claim that for three months he had planned to kill Dr. Aflatooni and send his remains to Iran, his abuse of Dr. Aflatooni in front of employees, and his chasing of Dr. Aflatooni in his car. CAR at 389-90. These events indisputably involve "acts" that are unquestionably "unlawful" which, given how they threatened grave harm upon another person, undeniably adversely reflect on Sabbaghi's moral character. In fact, these acts squarely fall under the definition of criminal harassment in Washington State.[7] Sabbaghi's harassment occurred in 2005, the same year the restraining orders were issued, which

---

[7] Under Washington State law, RCW 9A.46.020:
   (1) A person is guilty of harassment if:

    (a) Without lawful authority, the person knowingly threatens:

      (i)    To cause bodily injury immediately or in the future to the person threatened or to any other person; or

      (ii)   To cause physical damage to the property of a person other than the actor; or

      (iii)  To subject the person threatened or any other person to physical confinement or restraint; or

      (iv)  Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

    (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

Respondents' Motion for Summary Judgment
C08-1641-PET
10

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

was within the statutory period. CAR at 365-66; 8 U.S.C. § 1427(a). As unlawful acts that adversely reflect upon Sabbaghi's moral character and that occurred within the statutory period, Sabbaghi's harassment of Dr. Aflatooni precludes him from demonstrating good moral character. See 8 C.F.R. § 316.10(b)(3)(iii).

### B. Sabbaghi Cannot Demonstrate Good Moral Character Because he Provided False Testimony to Obtain and Immigration Benefit

Pursuant to 8 U.S.C. § 1101(f)(6), no person shall be regarded as a person of good moral character if, during the period for which good moral character is required, he has "given false testimony for the purpose of obtaining any" immigration benefits, regardless of the materiality of the testimony. See also United States v. Dang, 488 F.3d 1135, 1141 n.3 (9th Cir. 2007) (citing to 8 U.S.C. 1101(f)(6) as prohibiting a finding of good moral character when an alien provides false testimony for the benefit of obtaining an immigration benefit). Knowingly providing false testimony, even where the materiality of the false statement is not an element of the offense, is grounds for a denial of the application. See Kungys v. United States, 485 U.S. 759, 778 (1988). The regulations clarify the prohibition. In addition to the statutory prohibition, 8 C.F.R. § 316.10(a)(2)(vi) states that a naturalization applicant may not demonstrate good moral character if, within the statutory period, he has "given false testimony to obtain an benefit from the Act, if the testimony was made under oath or affirmation with the intent to obtain an immigration benefit." 8 C.F.R. § 316.10(a)(2)(vi).

The record indicates that Sabbaghi knowingly provided false testimony to obtain an immigration benefit on his naturalization application and under oath during his multiple interviews with USCIS about his history of unlawful acts and his business dealings in order to obtain naturalization, an immigration benefit. With regard to the harassment issue, at his March 14, 2007 interview, Sabbaghi testified under oath that he had never been part of a criminal or civil lawsuit and had never been the subject of a police investigation. CAR 166. After his attorney reminded him that he had been a part of a legal action and offered a copy of the re-issuance of the temporary restraining order, Sabbaghi explained that the issue concerned a mere "business dispute" that ended when his wife "just quit that clinic." CAR 165. He then indicated

Respondents' Motion for Summary Judgment
C08-1641-PET                                11

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

that nothing concerning the matter remained pending, which – in light how he was still bound by the permanent restraining order – was patently untrue. CAR 363-64. Moreover, Sabbaghi failed to submit the final disposition of the case as requested in USCIS's request for evidence issued on March 1, 2007; USCIS only learned about the harassment when it obtained public court records after the March 14, 2007 interview. CAR at 162, 356.

Sabbaghi again provided false testimony regarding the harassment matter during his May 5, 2008 hearing, when he stated, under oath, that the incident involved only a business dispute concerning his wife and a former employer. CAR 220, 230. During all three interviews and on his naturalization application, Sabbaghi provided false testimony with regard to his unlawful harassment, as the Superior Court of Washington for King County found he had committed. It is only plausible that Sabbaghi provided false testimony numerous times for an immigration benefit, considering how having revealed details about the harassment incident would have surely affected his ability to establish good moral character. As such, his false testimony renders him ineligible for naturalization. See 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(a)(2)(vi).

Sabbaghi also provided false testimony about his business dealings to obtain an immigration benefit. During his March 14, 2007 interview, Sabbaghi answered "no" when he was asked whether he has ever owned a business or company, and he stated that neither he nor or any family member had ever run any type of business out of his home. CAR at 171, 356. In doing so, Sabbaghi failed to admit his ownership of a corporation called Mohanna, LLC. CAR at 355. When asked during his May 5, 2008 interview why he failed to disclose the business at the prior interview, he stated that he "doesn't consider it a business," and that he used it only as a "shell company" to protect his house. CAR at 237. The existence of the business itself and Sabbaghi's involvement in it, however, call this claim into question.

By definition, LLC is a Limited Liability Company, which is, by definition, a business. See RCW 15.15.005(5) ("Limited liability company agreement" means "any written agreement of the members, or any written statement of the sole member, as to the affairs of a limited liability company and the conduct of its business which is binding upon the member or members.) (emphasis added). Furthermore, Washington State specifically defines LLC's as business

Respondents' Motion for Summary Judgment
C08-1641-PET                           12

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

structures. See, e.g., Washington Secretary of State, *Choosing the Structure of Your Business or Organization* (July 13, 2009), *available at* http://www.secstate.wa.gov/corps/registration_structures.aspx. Additionally, the Certificate of Formation for Mohanna, LLC, refers to it as a business. CAR at 404. The documents in the record indicate that Sabbaghi is one of two managers of the LLC, which he incorporated on June 27, 2005, and which he operates out of his house. CAR at 355. Finally, Sabbaghi owns a business account at Wells Fargo under the name Mohanna, LLC, with a balance of $21,875. CAR at 355, 472. Contrary to Sabbaghi's claim that Mohanna is not a business and is merely an entity he uses to protect his real estate, a letter written by one of his attorneys states that he did not transfer any real estate into the LLC, and he submitted no other evidence to USCIS reflecting that he did so. CAR at 397. Sabbaghi's failure to admit ownership of a business, and the fact that he did not accurately describe it when asked, indicate that he willfully chose to not disclose the information to obtain an immigration benefit. As such, Sabbaghi provided false testimony to obtain an immigration benefit, and is ineligible for naturalization. See U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(a)(2)(vi).

**C. Sabbaghi is Ineligible for Naturalization Because He Failed to Demonstrate Sufficient Attachment to the Principles of the Constitution and Form of Government of the United States**

In addition to failing to demonstrate good moral character, Sabbaghi was not able to demonstrate the most basic, and perhaps most critical requirement for obtaining the precious right of United States citizenship: that he will uphold the Constitution and the laws of this country. No person shall be naturalized unless he is "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a); see also 8 C.F.R. § 316.11(a). As 8 C.F.R. § 316.11(a) explains:

> Attachment implies a depth of conviction which would lead to active support of the Constitution. Attachment and favorable disposition relate to mental attitude, and contemplate the exclusion from citizenship of an applicant who is hostile to the basic form of government of the United States, or who disbelieves in the principles of the Constitution.

Respondents' Motion for Summary Judgment
C08-1641-PET                    13

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

As the regulation further provides, "[a]t a minimum, the applicant shall . . . demonstrat[e] an acceptance of the democratic, representational process established by the Constitution [and] a willingness to obey the laws which may result from that process." 8 C.F.R. § 316.11(b).

Courts have found that the question of attachment and favorable disposition "requires ascertainment of . . . [the applicant's] state of mind . . . and that can be fathomed only by the credibility of what he says and the reflection of his inner views by his outward conduct." In re Pet. for Naturalization of Jorge Vivino Daniel Arbesu, 347 F. Supp. 1014, 1017 (E.D. La. 1972) (citing In re Petition of Edward Sittler, 197 F.Supp. 278 (S.D. N.Y. 1961), aff'd, Sittler v. U.S., 316 F.2d 312 (2d Cir. 1963)). In determining whether a naturalization applicant would uphold the Constitution and the laws of this country, courts consider such factors as the credibility of the petitioner on the witness stand and his outward conduct. See, e.g., Sittler, 316 F.2d at 327.

Several of Sabbaghi's answers to questions during his May 5, 2008 interview show that he failed to demonstrate his willingness to obey United States laws. At one point during the interview, the USCIS official asked Sabbaghi, "If the law requires it, would you bear arms against Iran?" Sabbaghi answered "no." CAR at 223, 357; Sabbaghi DVD Part 2 at minute 4.52-5.04. Only after Sabbaghi's attorney informed him that if he answered in the negative he "can't be a citizen," and the USCIS official conducting the interview informed him that "in order to become a U.S. citizen you have to be willing to take the full oath of allegiance to the United States," did Sabbaghi change his answer. CAR at 223, 357; Sabbaghi DVD Part 2 at minute 5.05-5.40. When asked, "If the law requires it, would you bear arms against fellow members of your religion?" Sabbaghi hesitated for over 20 seconds before answering "yes" – only after his attorney assured him that it is a standard question. CAR at 223, 357; Sabbaghi DVD Part 2 at 5.52-6.25. As USCIS accurately determined, Sabbaghi took a significant amount of time to answer these straight-forward questions, and he displayed visible discomfort while doing so. CAR at 357; Sabbaghi DVD Part 2 at 5.05-5.40. Sabbaghi's seemingly disingenuous answers to the questions, coupled with his behavior during his interview, cast serious doubt on his claim that he would be sufficiently willing to obey laws and respect the democratic process. See In re

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

<u>Pet. for Naturalization of Jorge Vivino Daniel Arbesu</u>, 347 F.Supp. at 1017 (internal citations omitted). As such, pursuant to 8 C.F.R. § 316.11, Sabbaghi is ineligible for naturalization.

## V. **CONCLUSION**

Respondents respectfully request that the Court grant Summary Judgment in their favor.

Respectfully submitted,

TONY WEST
Assistant Attorney General
United States Department of Justice
Civil Division

JOSHUA E. BRAUNSTEIN
Assistant Director
Office of Immigration Litigation

　/s/ Stacey I. Young
STACEY I. YOUNG
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-7171
Facsimile: (202) 305-7000
Email: stacey.young@usdoj.gov

ATTORNEYS FOR RESPONDENTS

Dated: July 23, 2009

Respondents' Motion for Summary Judgment
C08-1641-PET

U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
TELEPHONE: (202) 305-7171

**CERTIFICATE OF SERVICE**

Case No. C08-01641-PET

I hereby certify that on this 23rd day of July, 2009, true and correct copies of Respondents' MOTION FOR SUMMARY JUDGMENT were served pursuant to the district court's ECF system to the following ECF filer:

> Bart Klein, Esq.
> Law Office of Bart Klein
> Seattle, WA 98104

          /s/ Stacey I. Young
STACEY I. YOUNG
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Respondents' Motion for Summary Judgment
C08-1641-PET

16

U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7171