UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMMED SABBAGHI,

    Petitioner,

v.

JANET A. NAPOLITANO, Secretary,
Department of Homeland Security, et al.,

    Respondents.

C08-1641Z

ORDER

THIS MATTER comes before the Court on Respondents' Motion for Summary Judgment, docket no. 16, and Petitioner's Motion for De Novo Review of Naturalization Denial, docket no. 17. The Court has reviewed all papers filed in support of and in opposition to the motions. The Court now GRANTS Respondents' Motion for Summary Judgment, docket no. 16, GRANTS IN PART and DENIES IN PART Petitioner's Motion for De Novo Review of Naturalization Denial, docket no. 17, STRIKES as moot Respondents' motion for leave to file, docket no. 23, and enters the following Order.

## BACKGROUND

Petitioner Mohammed Sabbaghi ("Sabbaghi"), a native of Iran, first entered the United States as a tourist on a Visitor B-2 visa in 1988. Certified Administrative Record ("CAR") at 678, 684-85. He became a lawful permanent resident in 1995. Id. at 678. His

ORDER - 1

wife, Dr. Anna Giustozzi, is a naturalized United States citizen and a physician. Id. at 537-38. Sabbaghi filed an Application for Naturalization (Form N-400) on March 10, 2004. CAR at 48-56. A United States Citizenship and Immigration Services ("USCIS") officer interviewed Sabbaghi under oath regarding his application on both October 21, 2004 and March 14, 2007. Id. at 353-54. On July 19, 2007, USCIS denied Sabbaghi's application because it determined that he failed to establish that he is a person of good moral character. Id. at 520.

Sabbaghi filed a request for a review of the denial pursuant to 8 U.S.C. § 1447(a) on July 26, 2007. Id. at 517. He underwent another interview during his appeal hearing on March 5, 2008. Id. at 222.

USCIS denied Sabbaghi's appeal on September 25, 2008. Id. at 351. Among other reasons, USCIS cited the Antiharassment Order of Protection that had been issued against Sabbaghi by the King County Superior Court of Washington in 2005 as evidence that he lacked the good moral character required for naturalization. Id. at 357.

The incident that led to the issuance of the Order of Protection is described in an Auburn, Washington Police Department report dated March 25, 2005. Id. at 246. Dr. Alfatooni reported that, while walking out to his car from his Crown Medical clinic, he was approached by Sabbaghi, who confronted him about selling him a percentage of the Clinic.[1] Id. Dr. Alfatooni told Sabbaghi to contact his attorney, after which, according to Dr. Alfatooni, Sabbaghi stated "I will take care of you" and mentioned that he had "hired two people to take [Alfatooni] back to Iran." Id. The report also states that "Alfatooni appeared to be afraid of Sabbaghi." Id.

///

---

[1] At the time, Dr. Alfatooni and Dr. Anna Giustozzi, Petitioner's wife, were business partners in a medical clinic located in Auburn, Washington, known as the Crown Medical Clinic.

ORDER - 2

Dr. Alfatooni provided further details about the encounter in a statement provided to the King County Superior Court. Id. at 388-90. He alleged that Sabbaghi told him that if he did not sign a business agreement, Sabbaghi would "have [him] killed." Id. at 388. Dr. Alfatooni also stated that "for the past three months [Sabbaghi] had been making plans to kill me and that he would chop up my body and send the remains to the southern part of the country of Iran." Id. Dr. Alfatooni alleged that, in the past, Sabbaghi had "verbally insulted me, threatened me, and abused me on numerous occasions in front of my personnel" and that "[o]n more than one occasion he has threatened to put a bomb in my car or create an accident on the highway to kill me." Id. at 389. He continued, "I have been uneasy and wary of Mr. Sabbaghi before, but now more than ever I am afraid that he may carry though with his threats . . . [h]e is attempting extortion using mafia and terrorist like tactics. I believe my life is in danger." Id.

The Superior Court issued an Antiharassment Temporary Order of Protection on March 31, 2005, which the Court extended after a hearing on April 11, 2005. Id. at 374; 379-81. Both parties were present at the hearing, but, at the request of Sabbaghi, no oral arguments occurred. CAR at 374. Sabbaghi was not represented by counsel at the hearing. Declaration of Mohammed Sabbaghi, docket no. 22, Ex. A, at 2. In the Order of Protection, the Court ordered Sabbaghi not to contact Dr. Alfatooni or any of his employees other than Sabbaghi's wife, and to remain at least 1,000 feet from Dr. Alfatooni's residence and clinics. CAR at 380. On May 11, 2005, after both parties submitted statements detailing their version of events, the Superior Court issued a final Antiharassment Order for Protection against Sabbaghi. Id. at 365. In the Order, the Superior Court indicated that it found by a preponderance of the evidence that Sabbaghi committed unlawful harassment. Id. The Order indicates that it was to be effective for one year, and it required Sabbaghi to pay $863.00 in fees and costs to Dr. Alfatooni. Id.

Sabbaghi denies the allegations of Dr. Alfatooni contained in the police report and in Dr. Alfatooni's statement to the Superior Court. Id. at 368-70. In his statement to the Superior Court, Sabbaghi detailed his version of the business dispute between Dr. Alfatooni and himself that led to the confrontation on March 25, 2005. Id. According to Sabbaghi, his wife purchased a 49% interest in the Auburn Medical Clinic (of which Dr. Alfatooni owned the remaining 51%) where she worked on March 21, 2005. Id. at 368. Sabbaghi claimed that his wife asked him to meet with Dr. Alfatooni in person to inform him of the purchase and provide him with copies of the purchase agreement. Id. Sabbaghi provided a substantially different account of that meeting than that given by Dr. Alfatooni. Id. According to Sabbaghi, he approached Dr. Alfatooni outside the clinic and "greet[ed] him courteously." Id. at 368. Sabbaghi then asked Dr. Alfatooni if he had received a copy of the purchase agreement, to which Dr. Alfatooni replied, "yes, talk to my attorney." Id. Dr. Alfatooni then got into his car and drove away. Id. In his statement, Sabbaghi claimed that "Dr. Alfatooni has craftily fabricated grotesque lies about threats to his life to delay and divert attention from his obligations to his new business partner." Id. Sabbaghi also notes that a restraining order was issued against Dr. Alfatooni for the protection of his wife, Dr. Giustozzi. Id.

Sabbaghi filed his Complaint/Petition for Review of Final Naturalization Denial, docket no. 1, pursuant to 8 U.S.C. § 1421(c), 8 C.F.R. § 310(b), and 8 C.F.R. 336.9(a)-(d) on November 10, 2008. He also cites 5 U.S.C. § 706(1), 8 C.F.R. 336.9, 8 U.S.C. § 1147(b)[2],

---

[2] 8 U.S.C. § 1147(b) does not exist. The Court assumes Sabbaghi intended to invoke 8 U.S.C. § 1447(b) which allows naturalization applicants to request a hearing before a district court when USCIS fails to render a naturalization determination within 120 days after the date of its examination. Because USCIS made its final naturalization determination on September 25, 2008, the statute is inapplicable.

ORDER - 4

8 U.S.C. § 1331, and 8 U.S.C. § 1361[3] as sources of subject matter jurisdiction. Id. at ¶ 1. The Petition names Michael Chertoff, then Director of Homeland Security, and Julia Harrison[4], the Seattle Field Office Director of USCIS, as Respondents and alleges that "[t]he USCIS failed to follow its own regulations, procedurally and on the merits, in denying this naturalization application." Id. at ¶¶ 5-6; 10.

The matter now before the Court is Respondents' Motion for Summary Judgment, docket no. 16. Sabbaghi also filed a Motion for De Novo Review of Naturalization Denial, docket no. 17, on the same day. In its Minute Order dated September 29, 2009, docket no. 20, the Court directed the parties to submit additional briefing on the issue of collateral estoppel and the effect of the Antiharassment Order of Protection on Sabbaghi's ability to establish good moral character. The Court has reviewed the parties' supplemental submissions, docket nos. 21 and 22.

# DISCUSSION

## A. Jurisdiction Following the Denial of a Naturalization Application

Under 8 U.S.C. § 1421(c) and 8 C.F.R. § 336.9(b), a person whose application for naturalization is denied after a hearing before an immigration officer may seek review of such denial in the United States District Court in which the person resides. "The review will be de novo, and the court will make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." Id. "Accordingly, <u>even if the [USCIS] is allowed to make the initial decision on a naturalization application, the district court has the final word</u> and does not defer to any of the [USCIS]'s

---

[3] The Court lacks jurisdiction under 28 U.S.C. § 1361. Mandamus relief can be granted only when the plaintiff has no available, adequate remedy. Guerrero v. Clinton, 157 F.3d 1190, 1197 (9th Cir. 1998). Because Sabbaghi seeks relief under 8 U.S.C. § 1421(c), mandamus relief is not available.

[4] In accordance with Fed. R. Civ. P. 25(d)(1), Janet Napolitano and Robin Oki were substituted for Michael Chertoff and Julia Harrison in this case.

ORDER - 5

findings or conclusions." United States v. Hovespian, 359 F.3d 1144, 1162 (9th Cir. 2004) (en banc) (emphasis in original).[5] Such review "is not limited to any administrative record but rather may be on facts established in and found by the district court de novo." Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002). As explained by the Second Circuit in Chan v. Gantner, 464 F.3d 289 (2d Cir. 2006), however, the statutory language "hearing de novo" does not necessarily mean a bench trial or an evidentiary hearing. The term "encompass[es] a wide variety of procedures," and the phrase de novo simply indicates "the district court's standard of review." Id. at 295-96. If the Court concludes that a statutory bar to meeting the requirements for naturalization exists, the Court need not engage in any fact finding, and may dispose of a case by way of summary judgment. Id. at 296; see also Abghari v. Gonzales, 596 F. Supp. 2d 1336, 1343 (C.D. Cal. 2009) ("The Court need not proceed with an evidentiary hearing or otherwise conduct new fact finding where the Court believes that the legal question it has identified . . . is a threshold matter.").

### B.  Summary Judgment Standard

The Court may grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, Anderson, 477 U.S. at 249.

---

[5] The Hovespian Petition returned to the Ninth Circuit later at 422 F.3d 883 (9th Cir. 2005) (Hovespian II) where the Court analyzed the standard of review for good moral character.

ORDER - 6

## C. Collateral Estoppel

Sabbaghi argues that the Antiharassment Order of Protection should not preclude him from establishing his good moral character because the alleged acts that gave rise to the Order never actually occurred. He is, however, collaterally estopped from denying the truth of the King County Superior Court's findings before this Court.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). Federal courts are required to give the same preclusive effect to state court judgments whenever the courts of that State would do so. Id. at 96. To foreclose relitigation of an issue under federal law[6]:

> (1) the issue must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

Trevino v. Gates, 99 F.3d 911, 923 (9th Cir. 1996).

Each of the three conditions is present in this case. The issue here – whether a preponderance of the evidence[7] indicates that Sabbaghi unlawfully harassed Dr. Alfatooni –

---

[6] Under Washington law, collateral estoppel requires:
(1) identical issues; (2) a final judgment on the merits; (3) the party against whom [collateral estoppel] is asserted must have been a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.
Hadley v. Maxwell, 144 Wn.2d 306, 311 (2001). The use of either the Federal or State standard leads to the same result.

[7] Sabbaghi claims that "in some courts, only a 10% finding is necessary to obtain the protection order." Petitioner's Responsive Supplemental Brief at 4. Washington law, however, requires the court to find by a preponderance of the evidence that unlawful harassment occurred, and Sabbaghi has not provided any evidence that the Superior Court deviated from the preponderance of the evidence standard in his case. See RCW

ORDER - 7

is identical to the central question in the unlawful harassment proceeding conducted in the Superior Court. See RCW 10.14.080(3); see also 8 C.F.R. § 316.2(b). Additionally, the determination of the issue was a critical and necessary part of the Superior Court's issuance of the Antiharassment Protective Order.

Finally, the issue was "actually litigated" by Sabbaghi in the Superior Court. A party must have had a "fair opportunity to be heard" in the prior proceeding for collateral estoppel to apply. See Riemers v. Peters-Riemers, et al., 684 N.W.2d 619, 627 (N.D. 2004). A party does not, however, need to actually provide testimony during the prior proceeding. Rogers v. Johnson-Norman, 466 F. Supp. 2d 162, 172 (D.D.C. 2006). Rather, it is sufficient that a party had a full and fair opportunity to litigate the issue. Id. Sabbaghi had ample opportunity to be heard during the Superior Court proceedings. At the April 11, 2005 hearing for the temporary antiharassment protective order, Sabbaghi appeared in court where he was sworn. CAR at 372. He submitted a three-page, single-spaced statement to the Court explaining his version of the events at issue, and certified under oath that the statement was true and correct. CAR at 367-72. Sabbaghi even noted, "Your honor, thank you for the opportunity to present my evidence here." CAR at 368. While Sabbaghi did not provide any oral testimony or argument at the April 11, 2005 hearing, he was not required to do so for the proceeding to constitute a full and fair opportunity to litigate the issue. See Rogers, 466 F. Supp. 2d at 172. Rather, the lack of oral argument at the hearing came at Sabbaghi's own request. ("The court will enter its final order on 5-11-05 without any further submission or oral argument. . . . at the request of [Sabbaghi]"). CAR at 374. The fact that Sabbaghi was not represented by counsel does not prevent the Superior Court proceeding from having preclusive effect. There is no evidence that he was not provided an opportunity to obtain counsel, and the decision not to do so was his own.

---

10.14.080(3).
ORDER - 8

The Court finds that the prior proceedings in the Superior Court satisfied all of the requirements of collateral estoppel. Sabbaghi is therefore collaterally estopped from denying the allegations of unlawful harassment that led to the issuance of the Antiharassment Protective Order.

### D. "Good Moral Character"

An alien petitioning for naturalization bears the burden of showing that he is eligible "in every respect" to become a United States citizen. Berenyi v. Dist. Dir., Immigration and Naturalization Service, 385 U.S. 630, 637 (1967); see also 8 C.F.R. § 316.2(b) (a naturalization applicant bears the burden of "establishing by a preponderance of the evidence that he or she meets all the requirements for naturalization"). The court should resolve doubts about the eligibility of a claimant in favor of the United States. Berenyi, 385 U.S. at 637. 'No alien has the slightest right to naturalization unless all statutory requirements are complied with.'" Federenko v. U.S., 449 U.S. 490, 506 (1981) (quoting United States v. Ginsberg, 243 U.S. 472, 474-75 (1917)).

One of the requirements for naturalization is that the alien must establish that, during the five-year statutory period immediately preceding the date of the application, he "has been and still is a person of good moral character." 8 U.S.C. § 1427(a). The term "good moral character" is not defined in the statute, Hovespian, 359 F.3d at 1166, but the Code of Federal Regulations provides further guidance. 8 C.F.R. § 316.10. The regulations state that good moral character is decided "on a case-by-case basis taking into account the elements enumerated in this section (see § 316.10(b)) and the standards of the average citizens in the community of residence." Id. at § 316.10(a)(2). The applicant bears the burden of demonstrating good moral character. Id. at § 316.10(a)(1). Absent a showing of extenuating circumstances, an applicant shall be found to lack good moral character if, during the five year statutory period, the applicant committed any "unlawful acts that adversely reflect upon

the applicant's moral character, or was convicted or imprisoned for such acts." Id. at § 316.10(b)(3)(iii).

Here, the Superior Court of Washington in King County found that Sabbaghi committed unlawful harassment against Dr. Alfatooni and therefore issued a temporary Antiharassment Order of Protection on March 31, 2005. CAR at 379-81. That Order was reissued on April 11, 2005. Id. at 374. After a hearing at which Sabbaghi was present, the Court found by a preponderance of the evidence that unlawful harassment existed and issued a full Antiharassment Order for Protection against Sabbaghi under RCW 10.14.080(4). CAR at 364-65; 374. Unlawful harassment is statutorily defined in Washington as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person," which serves "no legitimate or lawful purpose," which "would cause a reasonable person to suffer substantial emotional distress," and which "actually cause[s] substantial emotional distress." RCW 10.14.020(1).

The alleged acts that gave rise to the antiharassment protective order, including Sabbaghi's threats to kill Dr. Alfatooni, Sabbaghi's claims that he had planned to kill Dr. Alfatooni and send his remains to Iran, Sabbaghi's abuse of Dr. Alfatooni in front of clinic employees, and Sabbaghi's following of Dr. Alfatooni in his car, demonstrate that Sabbaghi lacks good moral character. Id. at 389-90. These acts fall within Washington's statutory definition of unlawful harassment and were therefore unlawful acts that adversely reflect upon Sabbaghi's moral character.[8] See RCW 10.14.020(1). Sabbaghi argues that this Court

---

[8] Sabbaghi's reliance on Nyari v. Napolitano, 562 F.3d 916, 920-21 (8th Cir. 2009), for the proposition that a naturalization denial cannot be based on the outcome of a civil proceeding is misplaced. In Nyari, USCIS denied the petitioner's naturalization application for failure to demonstrate good moral character because he had been placed by the Virginia Department of Social Services ("VDSS"), after administrative hearings, on the state's central child abuse and neglect registry. Id. at 919. VDSS had placed the petitioner on the registry based on a "founded sexual abuse allegation" by his daughters. Id. at 920. The allegations, however, were later recanted. Id. at 918. The Eighth Circuit overturned the district court's conclusion that the placement of the petitioner on the registry based on "founded" allegations had a

ORDER - 10

has specified that only criminal acts can preclude a finding of good moral character in a naturalization application. Kichel Lee, et al. v. Ashcroft, et al., 04-00449-RSL, Final Settlement, docket no. 150, Ex. 1, at 6. That settlement agreement, however, states that "[e]vidence of negative factors [for establishing good moral character] may include, <u>but is not limited to</u>: prior criminal record; the number of convictions; the seriousness of the criminal conduct; and whether the applicant has committed other violations of the law which are morally turpitudinous." Id. Thus, the settlement agreement does not prevent a civil finding of unlawful harassment from being used to determine that an applicant lacks good moral character. Because these acts and the resulting Protective Order occurred in 2005,

---

preclusive effect on the petitioner's ability to establish good moral character. Id. at 921. In doing so, the court noted that "we are aware of no case law – and the government concedes that there is none – in which a court reviewing the denial of a naturalization application has found that the applicant was not a person of good moral character based on the outcome of a civil administrative proceeding." Id. at 920-21.

Several key distinctions, however, can be made between Nyari and the present case. First, in Nyari, the alleged and recanted sexual abuse allegations arose more than 14 years prior to the filing of the application for citizenship and thus involved the failure of the district court to consider whether "there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of [Nyari's] present moral character." Id. at 921 (citing 8 C.F.R. § 316.10(a)(2)). In contrast, Sabbaghi's application falls within the five-year statutory period immediately preceding the date of application where, in the absence of certain barred classes of individuals not applicable here, Sabbaghi's moral character is evaluated "on a case-by-case basis taking into account the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). Second, in Nyari, USCIS gave preclusive effect to the finding of an administrative proceeding rather than a civil proceeding in state court, and the administrative finding was simply that the allegations were "founded." Id. at 918. Here, however, the Superior Court found by a preponderance of the evidence – the same standard used to determine whether a naturalization applicant has established good moral character – that unlawful harassment had occurred. CAR at 364-65; 374; 8 C.F.R. § 316.2(b). Finally, the allegations of sexual abuse that formed the basis of VDSS's finding were later recanted by Nyari's daughters who submitted affidavits in which they again recanted their prior allegations and explained why they had lied as young children. Nyari, 562 F.3d at 918. Here, in stark contrast, there is no evidence that Dr. Alfatooni has recanted any of the allegations against Sabbaghi that led to the issuance of the Antiharassment Protective Order.

ORDER - 11

they are within the five-year statutory period.[9] See 8 C.F.R. § 316.10(b)(3)(iii). Sabbaghi has also failed to show extenuating circumstances.[10] Consequently, the unlawful harassment acts preclude Sabbaghi from establishing by a preponderance of the evidence that he has the requisite good moral character.

Because the Court concludes that the Antiharassment Protective Order issued against Sabbaghi by the King County Superior Court demonstrates a lack of good moral character as a matter of law, the Court need not engage in any additional fact finding. See Abghari v. Gonzales, 596 F. Supp. 2d at 1343.[11]

## CONCLUSION

The Court finds that Sabbaghi is collaterally estopped from attacking the Superior Court of King County's finding that he unlawfully harassed Dr. Alfatooni. Because the actions that gave rise to the finding of unlawful harassment were unlawful acts that occurred within the five-year statutory period, the Court finds and concludes as a matter of law that Sabbaghi is not a person of good moral character. Accordingly, the Court GRANTS respondents' motion for summary judgment, docket no. 16.

---

[9] In his supplemental brief, Sabbaghi argues that the alleged "unlawful act" took place "far outside the three year good moral character period for naturalization applications." The statutory period for unlawful acts that preclude a finding of good moral character, however, is five years, not three years as Sabbaghi asserts. See 8 C.F.R. § 316.10(b)(3)(iii).

[10] Sabbaghi asserts that "[t]he extenuating circumstances is [sic] that petitioner did not commit the alleged civil finding." Petitioner's Responsive Supplemental Brief, docket no. 22, at 5. In support of this claim, he presents results from a polygraph exam that suggest he did not threaten Dr. Alfatooni. Petitioner's Responsive Supplemental Brief, Ex. A. As discussed in this Order, however, Sabbaghi is collaterally estopped from arguing that he did not unlawfully harass Dr. Alfatooni.

[11] The Government also contends Sabbaghi provided false testimony with regard to his business dealings and that he was not properly attached to the principles of the Constitution because he expressed reluctance to defend the United States against Iran or members of his own religion. Respondents' Motion for Summary Judgment at 5. These contentions are factual in nature and the Court need not address these claims in light of the Court's ruling that Petitioner lacks good moral character.

ORDER - 12

IT IS SO ORDERED.

DATED this 11th day of December, 2009.

                                          /s/ Thomas S. Zilly
                                          Thomas S. Zilly
                                          United States District Judge

ORDER - 13